ERIC L. WEBB (State Bar No. 192532)
BRIAN G. BEECHER (State Bar No. 239486)
**BARTSCH & WEBB**
9157 W. Sunset Boulevard, Suite 310
Los Angeles, California 90069
Telephone: (310) 248-3552
Facsimile: (310) 248-3546

Attorneys for Plaintiffs
JAMES DE GROOT and
PAULA DE GROOT

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA
# LOS ANGELES DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 2: 10-BK-26841-BB |
| BRAD JONES, | Chapter 7 |
| Debtor. | |
| | **COMPLAINT TO DETERMINE NON-DISCHARGEABILITY OF DEBT** |
| JAMES DE GROOT, an individual; PAULA DE GROOT, an individual | [11 U.S.C. § 523 *et seq.*] |
| Plaintiffs, | |
| vs. | |
| BRAD JONES, an individual | |
| Defendant. | |

- 1 -
**COMPLAINT TO DETERMINE NON-DISCHARGEABILITY OF DEBT**

Plaintiffs JAMES DE GROOT and PAULA DE GROOT ("Plaintiffs") complain and allege as follows:

## I.

## JURISDICTION AND VENUE

1. This Complaint to Determine Nondischargeability of Debt arises in the bankruptcy case of BRAD JONES ("Defendant" or "Jones"), the debtor in the above-captioned case (the "Bankruptcy Case") under Chapter 7 of Title 11 of the United Stated Code (the "Bankruptcy Code"), and is brought pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

2. This Complaint constitutes the initiation of an adversary proceeding arising under § 523 of the Bankruptcy Code in connection with Defendant's Bankruptcy Case and therefore, this Court has jurisdiction of this core proceeding by reason of 28 U.S.C. § 1334(a) and (b); 28 U.S.C. § 157(a) and (b).

3. Pursuant to 28 U.S.C. § 1409(a), this adversary proceeding (the "Adversary Proceeding") is properly commenced and prosecuted in this Court in which Defendant's Bankruptcy Case is pending.

## II.

## PARTIES

4. Plaintiff JAMES DE GROOT is an individual residing in the State of California.

5. Plaintiff PAULA DE GROOT is an individual residing in the State of California.

6. Jones is an individual residing in, and doing business in, State of California, County of Los Angeles.

7. Third Party JONES MOUNTAIN RESORT, LLC ("JMR") was a Limited Liability Company doing business in Los Angeles County, California; and with its principal place of business in the State of California, County of Los Angeles. At all times relevant, Jones abused the corporate privilege by using JMR's corporate form to perpetuate fraud and otherwise commit tortious acts and/or omissions described herein in order to attempt to evade personal liability. Jones has also failed to follow the proper corporate formalities for JMR, under-funded JMR, used

- 2 -

**COMPLAINT TO DETERMINE NON-DISCHARGEABILITY OF DEBT**

JMR funds and property as his own and otherwise treated the JMR corporate form as a sham. Accordingly, because JMR is merely the alter ego of Jones, Jones is thus individually liable for the acts and/or omissions of JMR. Additionally, Jones has personal liability for the actions of JMR due to his status as owner and/or officer of JMR. In any event, Jones' personal liability for the actions of JMR, comprises a debt to the Plaintiffs.

## III.
## FACTUAL OVERVIEW

8. This action arises from the Plaintiffs JAMES DE GROOT and PAULA DE GROOT'S (collectively, "Plaintiffs") purchase of 42268 Moonridge Road, Big Bear Lake, California 92315 (the "Property") from Jones in August 2007. Attached hereto as Exhibit "A" is true and correct copy of the purchase agreement for the Property (the "Purchase Agreement").

9. Prior to selling the Property to Plaintiffs, Jones had been operating the Property as a business, including but not limited to, operating a hotel/lodge on the Property.

10. Prior to Plaintiffs' purchase of the Property, Jones made both verbal and written representations to Plaintiffs regarding the Property, including but not limited to the Property's alleged profit and loss statements from 2005 to 2007 and purported[1] income tax returns for 2005 and 2006 that indicated that Jones' recent gross revenue at the Property had been $211,890.00 per year.

11. Accordingly, in reliance upon Jones' representations, including but not limited to Jones' representation that the Property's gross revenue was $211,890.00, Plaintiffs agreed to pay Jones a multiplier of approximately 5.2 times the gross revenue for the Property—(5.2 times $211,890.00)—which amounted to approximately $1,100,000.00.

12. However, in the summer of 2009, Plaintiffs came across computer records in a computer that was transferred from Jones to Plaintiffs and which indicated that Jones' true gross revenues at the Property had never been $211,890.00 per year, but were instead a paltry $65,201.00 per year. Thus, it appears that true value of the Property was $339,045.20 (5.2 times

---

[1] Plaintiffs say "purported", as there is not any indication that the copy of the tax return provided by Jones to Plaintiffs was actually submitted by Jones to the IRS.

**COMPLAINT TO DETERMINE NON-DISCHARGEABILITY OF DEBT**

$65,201.00)—a difference of over $760,000.00. Had Plaintiffs known the true revenue numbers for the Property, they would have never purchased it in the first place, and certainly not for the overinflated price that they did.

### IV.

### 2009 STATE COURT LAWSUIT AGAINST BRAD JONES

13. A state court action, LASC Case Number BC423127 was filed by Plaintiffs against Jones and JMR in late 2009. Jones and JMR Answered the Plaintiffs' Complaint on December 9, 2009. However, Jones thereafter refused to participate in the litigation and on March 10, 2010, the state court awarded Plaintiffs terminating sanctions, struck Jones' Answer, and entered default against him. Plaintiffs prepared and filed a default prove up package against Jones when they received notice that Jones had filed for bankruptcy.

### V.

### FIRST CLAIM FOR RELIEF

[For Determination of Nondischargeability of Debt Pursuant to 11 U.S.C. § 523(a)(2)(A)—Money, Goods Or Services Obtained By Fraud Or Falsehood]

14. Plaintiffs incorporates by reference and realleges each of the allegations set forth in paragraphs 1 through 13, inclusive, as though set forth in full.

15. At all times during the negotiations between Plaintiffs and Jones in connection with the Property, Jones knew that Plaintiffs were using the documents and representations of Jones to calculate their purchase price for the Property.

16. During approximately August 2007, Jones intentionally and deceitfully made materially false representations to Plaintiffs, including but not limited to, representing that the yearly gross revenue for the Property was $211,890.00, when Jones knew this to be false.

17. Moreover, Jones' representations to Plaintiffs were made with the intent to induce the Plaintiffs to rely upon them in connection with their purchase of the Property.

18. At all times relevant, Plaintiffs did so rely upon Jones' representations and were justified in doing so and as a result purchased the Property.

- 4 -

**COMPLAINT TO DETERMINE NON-DISCHARGEABILITY OF DEBT**

19. However, in the summer of 2009, Plaintiffs came across computer records in a computer that was transferred from Jones to Plaintiffs and which indicated that Jones' true gross revenues at the Property had never been $211,890.00 per year, but were instead a paltry $65,201.00 per year. Thus, it appears that true value of the Property was $339,045.20 (5.2 times $65,201.00)— a difference of over $760,000.00. Had Plaintiffs known the true gross revenue numbers for the Property, they would have never purchased it in the first place, and certainly not for the overinflated price that they did.

20. When Jones made such representations, he knew them to be false and he made such representations with the intention and purpose to deceive and defraud Plaintiffs and to induce Plaintiffs to act in reliance on such representations in the manner herein alleged, or with the expectation that Plaintiffs would so act.

21. Plaintiffs, at the time such representations were made by Jones, were ignorant of the falsity of Jones' representations and believed them to be true. In reliance on such representations, Plaintiffs were induced to and did act in the manner alleged herein, including but not limited to agreeing to and executing the Purchase Agreement and purchasing the Property.

22. Jones' actions in this regard were fraudulent, willful, intentional, malicious, and oppressive, thus entitling Plaintiffs to an award of punitive damages.

23. Jones has personally benefited by his fraudulent representations to Plaintiffs. Indeed, Jones' inducement of Plaintiffs to enter into the Purchase Agreement was obtained under false pretenses, false representations, and/or the actual fraud of Plaintiffs, wherein Jones tricked Plaintiffs to believe that the yearly gross revenue for the Property was $211,890.00, when Jones knew this to be false.

24. As set forth above, Jones has personal liability for the actions of JMR due to his status as owner and/or officer of JMR. Jones has personal liability for the actions of JMR due to alter-ego circumstances. Jones' personal liability for the actions of JMR, comprises a debt to the Plaintiffs.

25. Plaintiffs reasonably and justifiably relied upon the false pretenses, false representations, and actual fraud of Jones, in agreeing to purchase the Property.

**COMPLAINT TO DETERMINE NON-DISCHARGEABILITY OF DEBT**

26. The false pretenses, false representations, and actual fraud of Jones was material to the Plaintiffs' decision to purchase the Property.

27. Plaintiffs were unaware of the false pretenses, false representations, and actual fraud of the Jones, and believed the price pursuant to the Purchase Agreement to be the fair market value.

28. As a direct and proximate result of these acts and/or omissions, Jones has caused substantial and irreparable harm to Plaintiffs in an amount to be proven at trial, but in any event, in excess of, but not less than, $760,000.00, not including all attorneys' fees, interest and other costs and charges.

29. Based on the allegations as alleged herein, Plaintiffs request a judicial determination by this Court that the debts and damages from Jones and Jones' secret and/or sham enterprises arising from or relating to the allegations herein are not dischargeable pursuant to § 523(a)(2)(A).

## VI.

### SECOND CLAIM FOR RELIEF

[For Determination of Nondischargeability of Debt

Pursuant to 11 U.S.C. § 523(a)(2)(B)—Money, Goods Or Services Obtained Through A False Financial Statement]

30. Plaintiffs incorporates by reference and realleges each of the allegations set forth in paragraphs 1 through 29, inclusive, as though set forth in full.

31. At all times during the negotiations between Plaintiffs and Jones in connection with the Property, Jones knew that Plaintiffs were using the documents and other written financial statements of Jones concerning his financial condition, such as profit and loss statements and income tax returns for the Property, to calculate their purchase price for the Property. At all times, Jones made, prepared, adopted, and/or published these financial statements with the intent to deceive Plaintiffs.

32. During approximately August 2007, Jones intentionally and deceitfully gave materially false financial statements to Plaintiffs, including but not limited to, representing that the

yearly gross revenue for the Property was $211,890.00, when Jones knew this to be false.

33. Moreover, Jones' false financial statements to Plaintiffs were made with the intent to induce the Plaintiffs to rely upon them in connection with their purchase of the Property.

34. At all times relevant, Plaintiffs did so rely upon Jones' financial statements and were justified in doing so and as a result purchased the Property.

35. However, in the summer of 2009, Plaintiffs came across computer records in a computer that was transferred from Jones to Plaintiffs and which indicated that Jones' true gross revenues at the Property had never been $211,890.00 per year as represented in his financial statements, but were instead a paltry $65,201.00 per year. Thus, it appears that true value of the Property was $339,045.20 (5.2 times $65,201.00)—a difference of over $760,000.00. Had Plaintiffs known the true gross revenue numbers for the Property, they would have never purchased it in the first place, and certainly not for the overinflated price that they did.

36. When Jones made such representations via financial statements, he knew them to be false and he made such representations with the intention and purpose to deceive and defraud Plaintiffs and to induce Plaintiffs to act in reliance on such representations in the manner herein alleged, or with the expectation that Plaintiffs would so act.

37. Plaintiffs, at the time such representations were made by Jones, were ignorant of the falsity of Jones' representations and believed them to be true. In reliance on such representations, Plaintiffs were induced to and did act in the manner alleged herein, including but not limited to agreeing to and executing the Purchase Agreement and purchasing the Property.

38. Jones' actions in this regard were fraudulent, willful, intentional, malicious, and oppressive, thus entitling Plaintiffs to an award of punitive damages.

39. Jones has personally benefited by his fraudulent financial statements given to Plaintiffs. Indeed, Jones' use of false financial statements induced of Plaintiffs to enter into the Purchase Agreement under false pretenses, false representations, and/or the actual fraud of Plaintiffs, wherein Jones tricked Plaintiffs to believe that the yearly gross revenue for the Property was $211,890.00, when Jones knew this to be false.

COMPLAINT TO DETERMINE NON-DISCHARGEABILITY OF DEBT

40. Plaintiffs reasonably and justifiably relied upon the false pretenses, false representations, and actual fraud of Jones, in agreeing to purchase the Property.

41. The false pretenses, false representations, and actual fraud of Jones was material to the Plaintiffs' decision to purchase the Property.

42. Plaintiffs were unaware of the false pretenses, false representations, and actual fraud of the Jones, and believed the price pursuant to the Purchase Agreement to be the fair market value.

43. As a direct and proximate result of these acts and/or omissions, Jones has caused, substantial and irreparable harm to Plaintiffs in an amount to be proven at trial, but in any event, in excess of, but not less than, $760,000.00, not including all attorneys' fees, interest and other costs and charges.

44. Based on the allegations as alleged herein, Plaintiffs request a judicial determination by this Court that the debts and damages from Jones and Jones' secret and/or sham enterprises arising from or relating to the allegations herein are not dischargeable pursuant to § 523(a)(2)(B).

VII.

### THIRD CLAIM FOR RELIEF

[For Determination of Nondischargeability of Debt

Pursuant to 11 U.S.C. § 523(a)(6)—Willful and Malicious Injury]

45. Plaintiffs incorporates by reference and realleges each of the allegations set forth in paragraphs 1 through 44, inclusive, as though set forth in full.

46. At all times during the negotiations between Plaintiffs and Jones in connection with the Property, Jones knew that Plaintiffs were using the documents and representations of Jones to calculate their purchase price for the Property.

47. During approximately August 2007, Jones intentionally and deceitfully made materially false representations to Plaintiffs, including but not limited to, representing that the yearly gross revenue for the Property was $211,890.00, when Jones knew this to be false.

48. Moreover, Jones' representations to Plaintiffs were made with the intent to induce

- 8 -

**COMPLAINT TO DETERMINE NON-DISCHARGEABILITY OF DEBT**

the Plaintiffs to rely upon them in connection with their purchase of the Property.

49. At all times relevant, Plaintiffs did so rely upon Jones' representations and were justified in doing so and as a result purchased the Property.

50. However, in the summer of 2009, Plaintiffs came across computer records in a computer that was transferred from Jones to Plaintiffs and which indicated that Jones' true gross revenues at the Property had never been $211,890.00 per year, but were instead a paltry $65,201.00 per year. Thus, it appears that true value of the Property was $339,045.20 (5.2 times $65,201.00)—a difference of over $760,000.00. Had Plaintiffs known the true gross revenue numbers for the Property, they would have never purchased it in the first place, and certainly not for the overinflated price that they did.

51. When Jones made such representations, he knew them to be false and he made such representations with the intention and purpose to deceive and defraud Plaintiffs and to induce Plaintiffs to act in reliance on such representations in the manner herein alleged, or with the expectation that Plaintiffs would so act.

52. Plaintiffs, at the time such representations were made by Jones, were ignorant of the falsity of Jones' representations and believed them to be true. In reliance on such representations, Plaintiffs were induced to and did act in the manner alleged herein, including but not limited to agreeing to and executing the Purchase Agreement and purchasing the Property.

53. Jones' actions as set forth above were performed by Jones with either intent to harm Plaintiffs or with the knowledge that financial harm to Plaintiffs was substantially certain to occur.

54. Jones' actions as set forth above involved actions by Jones which were wrongful and without just cause or excessive, even in the absence of personal hatred, spite, or ill will.

55. Jones' actions in this regard were fraudulent, willful, intentional, and malicious, thus entitling Plaintiffs to an award of punitive damages.

56. Jones has personally benefited by his fraudulent representations to Plaintiffs. Indeed, Jones' inducement of Plaintiffs to enter into the Purchase Agreement was obtained under false pretenses, false representations, and/or the actual fraud of Plaintiffs, wherein Jones tricked

Plaintiffs to believe that the yearly gross revenue for the Property was $211,890.00, when Jones knew this to be false.

57. Plaintiffs reasonably and justifiably relied upon the false pretenses, false representations, and actual fraud of Jones, in agreeing to purchase the Property.

58. The false pretenses, false representations, and actual fraud of Jones was material to the Plaintiffs' decision to purchase the Property.

59. Plaintiffs were unaware of the false pretenses, false representations, and actual fraud of the Jones, and believed the price pursuant to the Purchase Agreement to be the fair market value.

60. As a direct and proximate result of these acts and/or omissions, Jones has caused substantial and irreparable harm to Plaintiffs in an amount to be proven at trial, but in any event, in excess of, but not less than, $760,000.00, not including all attorneys' fees, interest and other costs and charges.

61. Based on the allegations as alleged herein, Plaintiffs request a judicial determination by this Court that the debts and damages from Jones and Jones' secret and/or sham enterprises arising from or relating to the allegations herein are not dischargeable pursuant to § 523(a)(6).

WHEREFORE, Plaintiff requests the Court to enter a judgment, as follows:

A. That Jones is indebted to Plaintiffs for actual damages in an amount in excess of $760,000.00, as alleged herein;

B. That Jones is indebted to Plaintiffs for attorneys' fees, expenses and other costs and charges from the judgment until paid in full or date of entry of judgment (attorney fees pursuant to the Purchase Agreement, p. 7, ¶ 17);

C. That all Plaintiffs' claims, debts and damages in an amount in excess of $760,000 owed by Jones to Plaintiffs arising from or relating to the allegations herein are not dischargeable pursuant §§ 523(a)(2)(A), 523(a)(2)(B), and/or 523(a)(6);

D. That Plaintiffs are entitled to punitive damages against Jones, to be proven at trial; and

**COMPLAINT TO DETERMINE NON-DISCHARGEABILITY OF DEBT**

E.   For such other relief as this Court deems proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury.

Dated: July 1, 2010

**BARTSCH & WEBB**

By: _____
Eric L. Webb
Brian G. Beecher
Attorneys for Plaintiffs JAMES DE GROOT and PAULA DE GROOT

COMPLAINT TO DETERMINE NON-DISCHARGEABILITY OF DEBT

FORM B104 (08/07)                                                                                                                 2007 USBC, Central District of California

## ADVERSARY PROCEEDING COVER SHEET
(Instructions on Page 2)

**ADVERSARY PROCEEDING NUMBER**
(Court Use Only)

**PLAINTIFFS**
JAMES DE GROOT, an individual; PAULA DE GROOT, an individual

**DEFENDANTS**
BRAD JONES, an individual

**ATTORNEYS** (Firm Name, Address, and Telephone No.)
Eric L. Webb (CA SBN 192532) Brian G. Beechor (CA SBN 239486) BARTSCH & WEBB, 9157 W. Sunset Boulevard, Suite 310, Los Angeles, CA 90069

**ATTORNEYS** (If Known)
Brad D. Porterfield; 535 North Puente Street, Brea, California 92821; (949) 458-7254

**PARTY** (Check One Box Only)
☐ Debtor    ☐ U.S. Trustee/Bankruptcy Admin
☑ Creditor    ☐ Other
☐ Trustee

**PARTY** (Check One Box Only)
☑ Debtor    ☐ U.S. Trustee/Bankruptcy Admin
☐ Creditor    ☐ Other
☐ Trustee

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
Determination of Nondischargeability of Debt Pursuant to 11 U.S.C. § 523(a)(2)(A)—Money, Goods, or Services Obtained By Fraud or Falsehood; 11 U.S.C. § 523(a)(2)(B)—Money, Goods, or Services Obtained Through A False Financial Statement; and 11 U.S.C. § 523(a)(6) Willful/Malicious Injury

### NATURE OF SUIT
(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
[1] 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

(continued next column)

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
[2] 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
[3] 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq.
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

☑ Check if this case involves a substantive issue of state law      ☐ Check if this is asserted to be a class action under FRCP 23

☑ Check if a jury trial is demanded in complaint      Demand $ 1,239,282.40

**Other Relief Sought**
Punitive damages and attorneys' fees

FORM B104 (08/07), page 2              2007 USBC, Central District of California

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | |
|---|---|
| **NAME OF DEBTOR** <br> Brad G. Jones | **BANKRUPTCY CASE NO.** <br> 2:10-BK-26841BB |
| **DISTRICT IN WHICH CASE IS PENDING** <br> Central District | **DIVISIONAL OFFICE** <br> Los Angeles/ Central    **NAME OF JUDGE** <br> Sheri Bluebond |

| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
|---|---|---|
| **PLAINTIFF** | **DEFENDANT** | **ADVERSARY PROCEEDING NO.** |
| **DISTRICT IN WHICH ADVERSARY IS PENDING** | **DIVISIONAL OFFICE** | **NAME OF JUDGE** |

**SIGNATURE OF ATTORNEY (OR PLAINTIFF)**

*[signature]*

| **DATE** <br> 7/1/10 | **PRINT NAME OF ATTORNEY (OR PLAINTIFF)** <br> Eric L. Webb |
|---|---|

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs and Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not presented by an attorney, the plaintiff must sign.

| Attorney or Party Name, Address, Telephone & FAX Numbers, and California State Bar Number | FOR COURT USE ONLY |
|---|---|
| Eric L. Webb (CA SBN 192532); Brian G. Beecher (CA SBN 239486)<br>BARTSCH & WEBB<br>9157 W. Sunset Boulevard, Suite 310<br>Los Angeles, California 90069<br>Tel: 310-248-3552<br>Fax: 310-248-3546<br><br>Attorney for Plaintiff James De Groot and Paula De Groot | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| In re: Brad G Jones | CHAPTER 7 |
|---|---|
| | CASE NUMBER 2:10-bk-26841-BB |
| Debtor. | ADVERSARY NUMBER |
| JAMES DE GROOT, an individual; PAULA DE GROOT, an individual<br>Plaintiff(s),<br>vs.<br>BRAD JONES, an individual<br>Defendant(s). | *(The Boxes and Blank Lines below are for the Court's Use Only) (Do Not Fill Them In)*<br><br>**SUMMONS AND NOTICE OF STATUS CONFERENCE** |

TO THE DEFENDANT: A Complaint has been filed by the Plaintiff against you. If you wish to defend yourself, you must file with the Court a written pleading, in duplicate, in response to the Complaint. You must also send a copy of your written response to the party shown in the upper left-hand corner of this page. Unless you have filed in duplicate and served a responsive pleading by _____, the Court may enter a judgment by default against you for the relief demanded in the Complaint.

A Status Conference on the proceeding commenced by the Complaint has been set for:

| Hearing Date: | Time: | Courtroom: | Floor: |
|---|---|---|---|
| ☐ 255 East Temple Street, Los Angeles | | ☐ 411 West Fourth Street, Santa Ana | |
| ☐ 21041 Burbank Boulevard, Woodland Hills | | ☐ 1415 State Street, Santa Barbara | |
| ☐ 3420 Twelfth Street, Riverside | | | |

PLEASE TAKE NOTICE that if the trial of the proceeding is anticipated to take less than two (2) hours, the parties may stipulate to conduct the trial of the case on the date specified, instead of holding a Status Conference. Such a stipulation must be lodged with the Court at least two (2) Court days before the date set forth above and is subject to Court approval. The Court may continue the trial to another date if necessary to accommodate the anticipated length of the trial.

Date of Issuance: _____

KATHLEEN J. CAMPBELL
Clerk of Court

By: _____
*Deputy Clerk*

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

February 2010 (COA-SA)

F 7004-1

Summons and Notice of Status Conference - Page 2     F 7004-1

| In re (SHORT TITLE) | CASE NO.: 2:10-bk-26841-BB |
|---|---|
| Brad G Jones      Debtor(s). | |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on a CM/ECF docket.

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

A true and correct copy of the foregoing document described as **SUMMONS AND NOTICE OF STATUS CONFERENCE** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d), and **(b)** in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** - Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On _____ I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email addressed indicated below:

☐ Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL (Indicate method for each person or entity served):**
On _____ I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follow. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL (indicate method for each person or entity served):** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method) by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

_____  _____  _____
Date           Type Name           Signature

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

February 2010 (COA-SA)           F 7004-1